UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KELLY B.,

      Plaintiff,

v.

                                             Civil Action 3:25-cv-74
                                             Judge Michael J. Newman

COMMISSIONER OF SOCIAL
SECURITY,
                                             Magistrate Judge Chelsey M. Vascura

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Kelly B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.      BACKGROUND

Plaintiff filed her DIB and SSI applications in May 2022, alleging that she became disabled beginning May 2, 2022. (R. at 256–268.) After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic

hearing on November 21, 2023, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 43–67.) A vocational expert ("VE") also appeared and testified. On January 25, 2024, the ALJ issued an unfavorable determination, which became final on January 30, 2025, when the Appeals Council declined review. (R. at 17–36, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating medical opinion evidence and by failing to adequately address a gap in the record. (Pl.'s Statement of Errors 12–15, 15–18, ECF No. 12.)

## II.     THE ALJ'S DECISION

The ALJ issued the unfavorable determination on January 25, 2024. (R. at 17–36.) The ALJ initially concluded that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2027. (*Id*. at 19.) At step one of the sequential evaluation process,[1] the ALJ

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 2, 2022. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: lumbar spine degenerative disc disease; abdominal aortic atherosclerosis; chronic obstructive pulmonary disorder (COPD); diabetes mellitus (DM); diabetic polyneuropathy; hypertension (HTN); history of cerebrovascular accident (CVA); migraines; history of peripheral arterial disease status post successful stenting; depressive disorder; anxiety disorder; and borderline intellectual functioning (BIF). (*Id.* at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can: lift/carry ten pounds frequently and twenty pounds occasionally; sit six hours in an eight-hour workday; stand/walk four hours in an eight-hour workday; occasionally climb ramps or stairs; no climbing ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness and atmospheric conditions as defined in the SCO of the DOT; no exposure to hazards such as unprotected heights or moving mechanical parts; unskilled simple routine, and repetitive tasks that can be learned in thirty days or less; unable to perform at a production-rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner); occasional superficial contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution, persuasion of others or over-the-shoulder supervision; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; no contact with the general public as part of job duties; and can tolerate occasional changes in an otherwise static work environment explained in advance to allow time for adjustment to new expectations.

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

(*Id*. at 25–26.)

At step four, the ALJ relied on the VE's testimony to determine that Plaintiff was unable to perform her past relevant work. (*Id*. at 34.) Relying on the VE's testimony again at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of routing clerk, folder, and inspector. (*Id*. at 35.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*.)

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

4

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating medical opinion evidence and by failing to develop the record. (Pl.'s Statement of Errors 12–15, 15–18, ECF No. 12.) The undersigned considers each contention in turn and concludes that both lack merit.

### A.    Medical Opinion Evidence from Consultative Examiner Dr. Onamusi

Plaintiff first challenges the ALJ's evaluation of a medical opinion provided by consultative examiner, Dr. Onamusi. Specifically, she contends that the ALJ erred by failing to adopt or explain the rejection of Dr. Onamusi's opinion that Plaintiff was limited to lifting up to ten pounds occasionally. The undersigned concludes that this contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

---

[3] Because Plaintiff's applications were filed in 2022, they are subject to regulations governing applications filed after March 27, 2017.

findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

Here, Dr. Onamusi consultatively examined Plaintiff on September 7, 2022. (R. at 741–55.) In the "functional capabilities" section of his report, Dr. Onamusi wrote as follows:

> Claimant can sit for 30 minutes, stand for 15 minutes, and walk 5 minutes. Claimant can lift or carry 5 pounds. Claimant has pain in the back with bending. Claimant can do bits of housework with breaks. Claimant can do bits of laundry and grocery shopping with breaks. Claimant can do personal grooming activities. Claimant can drive occasionally. Claimant can use the hands and fingers.

(*Id*. at 752.) In the "medical opinion" section, Dr. Onamusi wrote:

> My evaluation indicated that claimant's subjective symptom reports were consistent with physical examination findings. Functionally, it is my opinion that claimant is able to sit frequently, stand or walk occasionally, bend to a limited extent occasionally, climb steps occasionally, lift up to 10 pounds occasionally, and use the upper extremities for gross and fine motor tasks frequently.

(*Id*. at 754.)

The ALJ then discussed and evaluated Dr. Onamusi's report, writing as follows:

6

> Babatunde Onamusi, M.D., an independent consultative examiner, examined the claimant on September 7, 2022. The claimant reported to Dr. Onamusi that she can sit for thirty minutes, stand for fifteen minutes, walk for five minutes, and lift/carry five pounds (Exhibit 8F). Such significant limitations are not supported by the claimant's treatment records or the examination findings of Dr. Onamusi. For instance, during the examination with Dr. Onamusi, the claimant reported working twelve hours a week as a cashier for the past year (Exhibit 8F at 13). Additionally, based upon his examination findings, Dr. Onamusi opined that the claimant can sit frequently, stand/walk occasionally, bend occasionally, climb steps occasionally, occasionally lift up to ten pounds, and use the upper extremities frequently for gross and fine motor tasks despite the claimant's subjective complaints (Exhibit 8F). The undersigned finds the opinions of Dr. Onamusi to be mostly persuasive given his medical specialty, specialized Social Security disability program knowledge, extensive experience performing independent, non-treating, objective medical examinations of Social Security disability claimants, and that he personally examined the claimant. Dr. Onamusi findings are supported by his examination. For instance, the claimant's physical examination during the examination of Dr. Onamusi revealed slow cautious gait, subjectively diminished sensation in the bilateral lower extremities, pain to palpation of the lumbosacral junction region, grip strength was two pounds bilaterally, and the rest of the examination was unremarkable. The claimant refused to perform walking on heels or toes due to becoming dizzy easily (Exhibit 8F). Additionally, the findings of Dr. Onamusi are consistent with the largely unremarkable findings during the physical examinations noted in the claimant's treatment records, which have been discussed above. However, Dr. Onamusi did not express the claimant's functional limitations and capabilities in vocationally relevant terms. Nonetheless, Dr. Onamusi's opinion seems to be consistent with a capacity to perform sedentary to a reduced range of light exertion, which is generally consistent with what has been determined herein.

(R. at 31.)

As this discussion demonstrates, the ALJ determined that Dr. Onamusi's opinions were mostly persuasive. (*Id*.) The ALJ noted Dr. Onamusi's specialization and experience conducting consultative examinations. (*Id*.) The ALJ also explained that Dr. Onamusi's conclusions were supported by his examination findings–including slow gait, diminished sensation in the lower extremities, and reduced grip strength–and that Dr. Onamusi's opinion seemed consistent with a capacity to perform sedentary to a reduced range of light exertion, which was also generally consistent with the ALJ's assessment of the record. (*Id*.) In short, the ALJ considered and explained the supportability and consistency factors.

Plaintiff does not challenge the ALJ's record-based explanations discussion of the supportability and consistency factors. Instead, she contends that because the ALJ determined that Dr. Onamusi's opinion was mostly persuasive, she was required to adopt Dr. Onamusi's ten-pound lifting limit or explain its omission.

In this instance, this contention is not well taken. To be sure, when an ALJ finds an opinion persuasive, she generally must incorporate its opined limits or explain their exclusion. But there is a distinction between an opinion that is fully persuasive and one that is mostly persuasive. By determining that Dr. Onamusi's opinion was mostly persuasive, the ALJ signaled that she accepted some, but not all, of Dr. Onamusi's opined limits. That is what occurred here. For instance, Dr. Onamusi opined that Plaintiff could only occasionally climb stairs. (*Id*. at 754.) The ALJ included that exact limit in Plaintiff's RFC even though she did not adopt Dr. Onamusi's occasional ten-pound lifting limit. (*Id*. at 25.)

Moreover, and contrary to Plaintiff's claims, the ALJ's evaluation of prior administrative findings from the state agency reviewers is consistent with this approach. (Pl.'s Statement of Errors 13–14.) The ALJ also determined that those findings were only somewhat or mostly persuasive. (R. at 28, 31.) The reviewers found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (*Id*. at 75, 88, 102, 115.) The ALJ determined that this finding, and some of the reviewers' other findings, were consistent with and supported by Plaintiff's minimal and conservative treatment history, which she discussed. (*Id*. at 28.)[4] The ALJ, therefore, included the reviewers' lifting finding in Plaintiff's RFC. (*Id*. at 25.) At the same time, the ALJ determined that other aspects of the reviewers' findings were not restrictive

---

[4] Notably, Plaintiff does not challenge the ALJ's evaluation of the prior administrative findings from the state agency reviewers.

enough given the complete record. (*Id*. at 28–29, 30–31.) Accordingly, the ALJ modified them and imposed more restrictive limits for standing, walking, climbing, and exposure to environmental hazards than found by the reviewers. (*Id*. at 28, 30–31.)

In sum, the ALJ did not find any findings or opinions entirely persuasive, including Dr. Onamusi's opinion. Instead, she evaluated all the findings and opinions in the record and accepted limits from each of them that she determined were persuasive while declining to accept others. In particular, she determined that the reviewers' lifting limits were persuasive and she included them in Plaintiff's RFC. Plaintiff has not identified reversible errors in this process.

Plaintiff also complains that the ALJ indicated that Dr. Onamusi's opinions were not stated in vocationally relevant terms and suggests that this critique was invalid. But Dr. Onamusi opined that Plaintiff could "bend to a limited extent occasionally." (R. at 754.) The ALJ, however, included in Plaintiff's RFC a limit to occasional stooping (*i.e.*, bending at the waist), and occasional crouching (*i.e.*, bending at the knees), which restated Dr. Onamusi's opined limit in more vocationally relevant terms.[5]  *See* SSR 85-14, 1985 WL 56857 at *7 (Jan. 1, 1985) (defining stooping and crouching as progressively strenuous forms of bending). Again, this does not constitute reversible error. For these reasons, Plaintiff's first contention of error lacks merit.

**B.      Developing the Record**

Plaintiff next contends that the ALJ reversibly erred by failing to develop the record. Specifically, she contends that information from her August 31, 2022 physical therapy evaluation is missing and that this omission triggered the ALJ's duty to further develop the record. This contention also lacks merit.

---

[5] In contrast, the state agency reviewers found that Plaintiff could frequently stoop and crouch. (R. at 76, 89, 102, 115.)

The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (internal citation omitted). An ALJ serves as a "neutral factfinder, not an advocate" and "promoting the claimant's case . . . is not the ALJ's obligation." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (citations omitted). Although an ALJ must ensure a full and fair hearing, "the claimant has the ultimate burden of producing sufficient evidence to show the existence of a disability." *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *5 (6th Cir. 2000) (citations omitted). Accordingly, an ALJ is not required to further develop the record if the existing evidence is sufficient to evaluate a disability claim. *See Hizer v. Comm'r of Soc. Sec.*, 852 F. App'x 999, 1003 (6th Cir. 2021) (no duty to develop the record where the claimant was represented by counsel and the record was not deficient).

Here, Plaintiff has not shown that the record was insufficient in any meaningful sense. The record reflects that she was referred to physical therapy on July 26, 2022, for degenerative joint disease of the lumbar spine, and she underwent an initial evaluation on August 31, 2022 that utilized the Oswetry disability index for low back pain. (*Id*. at 1203, 859, 860.) Although her individual Oswalt questionnaire responses are not included in the record, the record shows that she had a composite Oswalt score of 39/50. (*Id*. at 860.) The record further shows that the evaluator assessed several short-term goals for Plaintiff, including improving her hip strength to a 4/5 and improving her active trunk ranges of motion to within normal limits with minimal pain by September 30, 2022. (*Id*.) Plaintiff, however, did not return to physical therapy after her initial evaluation, and she was eventually discharged. (*Id*.)

On these facts, the undersigned is not convinced that the absence of the more specific results from Plaintiff's August 31, 2022 evaluation constitutes a "obvious gap in the record" that the ALJ was obligated to address. (Pl.'s Statement of Errors 17, ECF No. 12.) Although the ALJ noted that Plaintiff discontinued physical therapy after her initial evaluation, the ALJ's determination did not rely on the missing evaluation results to support or discount other evidence. (R. at 26, 29.) Moreover, the evaluation from a physical therapist does not constitute a medical opinion, which makes it distinguishable from the case upon which Plaintiff relies. *See Mansfield v. Comm'r of Soc. Sec.*, No. 14-11766, 2015 WL 2236253, at *12 (E.D. Mich. May 12, 2015) (holding that a missing page from a *bona fide* medical opinion that an ALJ was required to evaluate constituted an obvious gap in the record).

In any event, even if the missing details from the August 31, 2022 evaluation had created some meaningful gap, Dr. Onamusi consultatively evaluated Plaintiff seven days later on September 7, 2022. (R. at 741–55.) Dr. Onamusi's consultative examination included strength testing of Plaintiff's neck, thoraco-lumbar spine, and hips, as well as range-of-motion testing for her cervical and lumbar spine. (*Id*. at 741, 743.) Accordingly, any potential gap was filled. For these reasons, Plaintiff's second contention of error lacks merit.

## V.     RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

11

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

12